UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITEDHEALTH GROUP
INCORPORATED,

                       Plaintiff,

v.

CEDE & CO., as partnership
nominee for THE DEPOSITORY
TRUST COMPANY; and THE
BANK OF NEW YORK, not in its
individual capacity, but solely in its
capacity as Indenture Trustee on
behalf of all Holders of 5.800%
Notes Due March 15, 2036 of
UnitedHealth Group Incorporated,

                       Defendants.

Civil File No.

06w4307
JSJJ6

**COMPLAINT**

     Plaintiff UnitedHealth Group Incorporated ("UHG"), by its undersigned attorneys,

for its Complaint for Declaratory and Injunctive Relief against Defendants Cede & Co.

("Cede"), as partnership nominee for The Depository Trust Company (the "DTC"), and

The Bank of New York ("BoNY" or the "Trustee"), alleges, upon knowledge as to itself

and its own actions, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

    1.    UHG seeks a declaratory judgment that UHG is not in default under an

indenture (the "Indenture"), entered between UHG and BoNY, as Trustee, with respect to

$850,000,000 aggregate principal amount of senior notes (the "Notes") issued by UHG

**SCANNED**

OCT 2 6 2006

U.S. DISTRICT COURT MPLS

under the Indenture on March 2, 2006. UHG brings this action in response to a "Notice of Default" that Cede, the registered holder of the Notes, delivered to UHG and BoNY on August 28, 2006.

2.    The Notice, while nominally provided by Cede, was sent at the behest of certain beneficial owners of the Notes, which collectively are claimed to beneficially own at least 25% in principal amount of the outstanding Notes (the "Beneficial Owners").

3.    These Beneficial Owners are four hedge funds: Whitebox Convertible Arbitrage Partners, LP; Whitebox Hedged High Yield Partners, LP; Linden Capital L.P.; and Pandora Select Partners, LP (the "Hedge Funds"). Through the issuance of notices of default like the Notice sent to UHG, these Hedge Funds and other hedge funds have sought to capitalize improperly on delays by public companies in filing their periodic reports with the SEC.

4.    The Notice alleges that UHG's failure to file timely its Form 10-Q for the fiscal quarter ended June 30, 2006 (*i.e.*, the Second Quarter of 2006) with the Securities and Exchange Commission ("SEC") by August 9, 2006 constitutes a default under Section 504(i) of the Indenture.

5.    Following the initiation by UHG's Board of a review of UHG's current and historic stock option grant practices, UHG delayed filing its 10-Q for the Second Quarter 2006. On April 4, 2006, UHG's Board appointed a Committee comprised of independent directors (the "Independent Committee") to review those practices.

6.    Accordingly, UHG delayed filing its 10-Q to permit UHG's auditors to determine the possible effects of the results of the stock option review on UHG's

financial statements, and to ensure that UHG's financial statements comply with SEC disclosure requirements.

7.     Here, as elsewhere, the Hedge Funds seek to convert an appropriate delay by UHG in filing its quarterly report with the SEC into a default under the Indenture, purportedly triggering the obligation by UHG to repay $850,000,0000 in aggregate principal amount of Notes nearly 30 years ahead of schedule.

8.     On October 15, 2006, UHG's Independent Committee reported its findings that certain options had likely been backdated (the "Report").

9.     UHG and its auditors are still considering the accounting implications flowing from UHG's past option granting practices, including the need for any restatements of previously filed financial statements. Accordingly, UHG likely will delay further filing its Form 10-Q for the Second Quarter 2006 and its Form 10-Q for the Third Quarter 2006.

10.     In the interim, UHG has provided the SEC and the Hedge Funds, through the Trustee, with nearly all the information that the Hedge Funds would have received if the 10-Q had been filed timely, in a press release containing financial data for the Second Quarter filed on July 19, 2006, and in a notice on Form 12b-25 filed on August 10, 2006, one day past the deadline for filing UHG's 10-Q, which contained substantially all the information that would be in a Form 10-Q for the Second Quarter 2006.

11.     Thus, even though the Hedge Funds who apparently caused the Notice to be sent have received substantially all of the information that they would have received if UHG had filed its Form 10-Q on time, the Hedge Funds are seeking to take advantage of

UHG's independent stock option review and to invoke a non-existent default to improperly require UHG to repay the Notes almost 30 years ahead of schedule.

12.     The allegation that UHG's failure to file timely its 10-Q with the SEC constitutes a default under the Indenture contravenes the plain language of the Indenture.

13.     In fact, Section 504(i) of the Indenture does not impose an independent requirement that UHG file its periodic reports with the SEC on particular dates.  Rather, Section 504(i) requires that UHG "cause copies of all current, quarterly and annual financial reports," which UHG is required to file with the SEC, to be filed with the Trustee *"within 15 days of filing" such reports with the SEC* — not, for example, within 15 days of the date when such reports were scheduled to be filed with the SEC.

14.     Section 504(i) merely requires that beneficial owners of the Notes, through the Trustee, receive the same information as equity shareholders, soon after that information is disclosed to the SEC.  This provision does not address the timing of the SEC filings.

15.     Because Section 504(i) of the Indenture requires only that UHG file with the Trustee a copy of its 10-Q within 15 days after UHG files its 10-Q with the SEC, and because UHG has not yet filed with the SEC its 10-Q for the Second Quarter 2006, and therefore is not in a position to provide copies of its 10-Q to the Trustee, UHG respectfully requests that this Court enter a judgment declaring that UHG is not in default under Section 504(i) of the Indenture as alleged in the Notice.

16.     By invoking Section 702 of the Indenture, which permits, upon a continuing Event of Default, the Trustee or the registered holders of not less than 25% in

4

principal amount of the outstanding Notes to declare the principal amount of the Notes to be due and payable immediately, the Notice raises the prospect that the Trustee or the registered holders — *i.e.*, the hedge funds that caused the Notice to be sent — will seek to "accelerate" the Notes if UHG does not file its Form 10-Q for the Second Quarter 2006 by October 26, 2006.

17.    By declaring acceleration of the Notes, the Trustee or registered holders of the Notes would purport to require UHG to repay immediately the $850,000,000 in aggregate principal amount of the Notes — almost 30 years ahead of the scheduled date of March 15, 2036.

18.    Regardless of whether UHG is in technical default, this Court should enter a judgment declaring that acceleration should not be enforced here for equitable reasons, because the default by UHG, if any, is technical and immaterial, because UHG provided the Trustee (and, therefore, the beneficial owners of the Notes, including the Hedge Funds) with substantially all of the information that would have been contained in the Form 10-Q, and thus acceleration would be an inequitably disproportionate penalty.

### JURISDICTION AND VENUE

19.    Plaintiff UHG brings this claim for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

20.    The Court has subject matter jurisdiction over UHG's claim for declaratory relief pursuant to 28 U.S.C. § 1331, because the action arises under the TIA, 15 U.S.C. § 77nnn.

21.    The Court also has subject matter jurisdiction over this dispute pursuant to

5

28 U.S.C. §§ 1332 and 1441, because there is complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds the value of $75,000, exclusive of interests and costs.

22.    Pursuant to 28 U.S.C. § 1391, venue is proper in the District of Minnesota, because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

23.    UnitedHealth Group Incorporated is a corporation organized under the laws of the State of Minnesota, with its principal place of business at 9900 Bren Road East, Minnetonka, Minnesota  55343.  UnitedHealth Group Incorporated is the successor to United HealthCare Corporation.

24.    Cede & Co. is partnership nominee for The Depository Trust Company. The Depository Trust Company is a limited-purpose trust company organized under New York State banking law.  Cede's and the DTC's principal place of business is 55 Water Street, New York, New York 10041.  Cede & Co. is the registered holder of record of the Notes and is sued solely in such capacity.

25.    The Bank of New York is a New York banking corporation with its principal corporate trust office at 101 Barclay Street, New York, New York 10286. Under the Indenture, The Bank of New York serves as Trustee under the Indenture pursuant to which the Notes were issued, and The Bank of New York is sued not in its individual capacity but solely in its capacity as Trustee.

## FACTS

26.     UHG is a diversified health and well-being company dedicated to making

health care work better.  Through strategically aligned, market-defined businesses, UHG

designs products, provides services and applies technologies that improve access to

health and well-being services, simplify the health care experience, promote quality and

make health care more affordable.  UHG's common stock is traded on the New York

Stock Exchange.

### The 5.800% Notes Due March 15, 2036

27.     On March 2, 2006, UHG completed a public offering of $850,000,000

aggregate principal amount of its 5.800% Notes Due March 15, 2036, at a price to the

public per $1,000 of principal amount of .99279 or 99.279%.  The Notes have a stated

maturity of March 15, 2036.

28.     UHG issued the Notes pursuant to an Indenture entered into by UHG and

BoNY, as Trustee, as of November 15, 1998.  The Indenture was qualified under the TIA

in 1999.  The Indenture is attached as Exhibit A hereto.

29.     Section 1306 of the Indenture provides that the Indenture is governed by

the laws of the State of New York.

30.     Cede & Co. is the registered Holder of record of the Notes.

### Events of Default Under the Indenture

31.     Under the Indenture, UHG has certain obligations, including the obligation

to provide the Trustee with copies of the periodic reports that UHG files with the SEC, as

described further below.  The Indenture also defines the circumstances in which UHG is

7

in default under the Indenture.

32.    Section 701 of the Indenture defines certain "Events of Default."
Specifically, Section 701(v) provides that with respect to any series of securities issued
pursuant to the Indenture, a "failure by the Company for 60 days after notice to comply
with any of its other agreements in this Indenture or any Security of such series"
constitutes an Event of Default.

33.    Section 701 further provides that a "Default" under Section 701(v) is not an
Event of Default until certain notice requirements are satisfied, permitting, among other
things, UHG to cure the Default "within 60 days after receipt" of the Notice of Default.

34.    The Indenture vests the Trustee with rights and duties with respect to an
Event of Default.  For example, Section 801(i), titled "Duties of Trustee," provides:

> With respect to the Securities of any series, if an Event of
> Default has occurred and is continuing, the Trustee shall
> exercise such of the rights and powers vested in it by this
> Indenture, and use the same degree of care and skill in their
> exercise, as a prudent man would exercise or use under the
> circumstances in the conduct of his own affairs.

35.    Section 706 of the Indenture permits the registered holder of any security of
any series to bring an action with respect to an Event of Default, provided the registered
holder satisfies certain prerequisites, requiring, essentially, that the Holder request that
the Trustee pursue the remedy, and that the Trustee refuse.

36.    Section 702 of the Indenture also permits the Trustee or the registered
holders of not less than 25% in aggregate principal amount of the Notes to declare
acceleration of the debt upon a continuing Event of Default, and provides that "[u]pon

such declaration the principal . . . , premium, if any, and interest shall be due and payable immediately."

37.    Accordingly, by declaring acceleration of the Notes, the Trustee and registered holders would purport to require UHG to repay immediately the $850,000,000 in aggregate principal amount of the Notes — almost 30 years ahead of schedule.

38.    Under Section 702, although registered holders of 25% in aggregate principal amount of the Notes may *declare* acceleration, only the Holders of a *majority* in principal amount of the Notes may *rescind* acceleration, and only if all existing Defaults have been cured or waived.

**The Trust Indenture Act**

39.    The Indenture is governed by the TIA, codified at 15 U.S.C. § 77aaa *et seq.*

40.    Section 318(c) of the TIA provides that certain sections of the TIA, including Section 314, which requires the provision of periodic reports to the Trustee, supersede any provisions in a qualified Indenture that are inconsistent with such Sections.

41.    UHG's Indenture is so qualified.

**The Securities Exchange Act of 1934**

42.    The Exchange Act requires periodic reporting to the SEC of information by companies with publicly traded securities.

43.    Under Section 13 of the Exchange Act, UHG is required to file with the SEC current, quarterly and annual financial reports on Forms 8-K, 10-Q and 10-K, respectively.

44.    The Instructions for Form 10-Q require that the report on Form 10-Q be

filed with the SEC within 40 days following the last day of each fiscal quarter.
Accordingly, UHG's Form 10-Q for the Second Quarter 2006 (the fiscal quarter ended
June 30, 2006) was due to be filed with the SEC on August 9, 2006.

**Section 504(i) of the Indenture**

45.     Section 504 of the Indenture, titled "Commission Reports," requires that
UHG "cause copies of all current, quarterly and annual financial reports," which UHG is
required to file with the SEC, to be filed with the Trustee "within 15 days of filing" such
reports with the SEC — not, for example, within 15 days of the date when such reports
are due to be filed with the SEC.  Section 504(i) does not specify a time period within
which such SEC reports must be filed with the SEC.

46.     Specifically, Section 504(i) of the Indenture provides:

> So long as any of the Securities remain Outstanding, the
> Company shall cause copies of all current, quarterly and
> annual financial reports on Forms 8-K, 10-Q and 10-K,
> respectively, and all proxy statements, which the Company is
> then required to file with the Commission pursuant to Section
> 13 or 15(d) of the Exchange Act to be filed with the Trustee
> and mailed to the Holders of such series of Securities . . . in
> each case, <u>within 15 days of filing with the Commission</u>.  The
> Company shall also comply with the provisions of TIA §
> 314(a).

(Emphasis added.)

47.     TIA § 314(a) requires that UHG provide to the Trustee copies of annual
reports and other information that UHG is required to file with the SEC.  The TIA does
not specify a time period within which such SEC reports must be filed with the SEC, or
provided to the Trustee, and the SEC has not issued rules or regulations establishing any

such time period.

48.     Specifically, TIA § 314(a), titled "Periodic reports," provides in relevant part:

> Each person who, as set forth in the registration statement or application, is or is to be an obligor upon the indenture securities covered thereby shall . . . file with the indenture trustee copies of the annual reports and of the information, documents, and other reports . . . which such obligor is required to file with the Commission pursuant to section 13 or 15(d) of [the Exchange Act] . . . .

## The Independent Stock Option Review

49.     In light of recent focus by the SEC and others on stock option grant practices by publicly traded companies, UHG's Chairman and Chief Executive Officer recommended that the Board of Directors appoint a Committee comprised of independent directors to retain and work with outside legal counsel to review UHG's current and historic stock option grant practices.

50.     On April 7, 2006, UHG filed with the SEC a Current Report on Form 8-K and its Proxy Statement on Schedule 14A disclosing that UHG had undertaken a review of its current and historic stock option grant practices.

51.     The Board of Directors accepted this recommendation and formed a Committee of independent directors, which engaged independent counsel to assist in its review.

52.     UHG's Form 10-Q for the Second Quarter 2006 (the fiscal quarter ended June 30, 2006) was scheduled to be filed with the SEC on August 9, 2006.

53.     As a result of the independent stock option review, UHG delayed filing its

Form 10-Q for the Second Quarter 2006. The purpose of the delay is to permit UHG's auditors to determine the possible effects of the results of the stock option review on UHG's financial statements.

54.    On October 15, 2006, the Independent Committee announced that it had reported the findings of its review to the non-management directors. The Report concludes, among other things, that certain options had likely been backdated. In accepting the report, UHG's Board of Directors announced a number of actions and decisions, including a number of measures to improve UHG's corporate governance and compensation practices.

55.    UHG and its auditors are still considering the accounting implications flowing from UHG's past option granting practices. Accordingly, UHG likely will delay further filing its Form 10-Q for the Second Quarter 2006 and its Form 10-Q for the Third Quarter 2006 to complete its analysis of adjustments to previously filed financial statements in light of the Report, including determining whether any restatements of previously filed financial statements will be required.

**Information Provided by UHG to the SEC and the Trustee Concerning the Second Quarter 2006**

56.    In the interim, UHG has provided the SEC and the Trustee (and, therefore, the beneficial owners of the Notes, including the Hedge Funds), with nearly all the information that they would have received if the 10-Q had been filed timely.

57.    On July 19, 2006, UHG issued a press release containing financial data for its fiscal quarter ended June 30, 2006.

58.     On July 19, 2006, UHG furnished to the SEC that press release on a Current Report on Form 8-K (the "Second Quarter Earnings 8-K"). UHG's Second Quarter Earnings 8-K is attached as Exhibit B hereto.

59.     On July 19, 2006 at 8:45 a.m. Eastern time, UHG held a conference call with investors to discuss UHG's results, strategy and future outlook. On the same day UHG hosted a live webcast of this conference call from the Investor Information page of UHG's Web site (www.unitedhealthgroup.com) and made available a replay of the call on the same site for one week following the live call.

60.     On August 10, 2006, one day after its 10-Q was to be filed with the SEC, UHG filed with the SEC a report on Form 12b-25, which is, under SEC regulations, a notification of late filing of a required periodic report. The Form 12b-25 included an appendix containing UHG's unaudited financial information for the Second Quarter 2006 that was qualified for the effect of any matters arising out of UHG's stock option review. With this qualification, the 12b-25 contained substantially all the information that UHG would include in a Form 10-Q for the Second Quarter 2006. UHG's Form 12b-25 is attached as Exhibit C hereto.

61.     Also on August 10, 2006, UHG filed with the SEC a Current Report on Form 8-K, which attached a press release announcing the late filing of the 10-Q and incorporated by reference all of the information in the Form 12b-25.

62.     On August 14, 2006, within 15 days after the SEC due date for UHG's Form 10-Q for the Second Quarter 2006, UHG provided to the Trustee the August 10, 2006 report on Form 12b-25.

63.     On October 19, 2006, UHG issued a press release containing financial data for its fiscal quarter ended September 30, 2006.

64.     On October 19, 2006, UHG furnished to the SEC that press release on a Current Report on Form 8-K (the "Third Quarter Earnings 8-K"). UHG's Third Quarter Earnings 8-K is attached as Exhibit D hereto.

65.     On October 19, 2006 at 8:45 a.m. Eastern time, UHG held a conference call with investors to discuss UHG's results, strategy and future outlook. On the same day UHG hosted a live webcast of this conference call from the Investor Information page of UHG's Web site (www.unitedhealthgroup.com) and made available a replay of the call on the same site for one week following the live call.

**The Notice of Default**

66.     On August 28, 2006, Cede, acting as registered holder of record of the Notes and on behalf of certain Beneficial Owners of the Notes, delivered the Notice to UHG and BoNY as Trustee. The Notice is attached as Exhibit F hereto.

67.     The Notice, while nominally provided by Cede, apparently was sent at the behest of certain Beneficial Owners of the Notes, which collectively are claimed to beneficially own at least 25% in principal amount of the outstanding Notes.

68.     These Beneficial Owners are four Hedge Funds: Whitebox Convertible Arbitrage Partners, LP; Whitebox Hedged High Yield Partners, LP.; Linden Capital L.P.; and Pandora Select Partners, LP.

69.     The Notice states that Cede "hereby notifies [UHG] that a default has occurred under Section 504(i) of the Indenture and that this letter is a Notice of Default as

14

required under Section 701(v) of the Indenture."

70.     The Notice describes the requirements imposed by Section 504(i) of the

Indenture, stating that:

> Section 504(i) of the Indenture requires the Company to cause
> copies of all current, quarterly and annual financial reports on
> Forms 8-K, 10-Q and 10-K, respectively, which the Company
> is then required to file with the Commission pursuant to
> Section 13 or 15(d) of the Exchange Act to be filed with the
> Trustee and mailed to the Holders of such series of Securities
> . . . in each case, within 15 days of filing with the
> Commission.  Section 504(i) of the Indenture also requires
> the Company to comply with the provisions of TIA Section
> 314(a).

71.     The Notice further states that Cede "has been advised" by the Beneficial

Owners (through an intermediary) that "as of August 9, 2006, [UHG was] required to

have filed with the Commission a quarterly report on Form 10-Q for the fiscal quarter

ended June 30, 2006 (the 'Form 10-Q')," and that:

> (i)     [UHG's] failure to timely file the Form 10-Q with the
>         Commission constitutes a default under Section 504(i)
>         of the Indenture (the "Default"),
>
> (ii)    the continuance of this Default for a period of sixty
>         (60) days after the date this Notice of Default has been
>         given shall constitute an "Event of Default" under
>         Section 701(v) of the Indenture, and
>
> (iii)   pursuant to Section 702 of the Indenture, if an Event of
>         Default occurs and is continuing, the Trustee or the
>         Holders of not less than 25% in principal amount of
>         the outstanding Notes may declare the principal
>         amount of the Notes to be due and payable
>         immediately.
>
> The Notice requests that UHG remedy these purported
> defaults.

**UHG's Credit**

72.     The Independent Committee's review does not affect UHG's current financial performance and will not affect UHG's ability to repay interest and principal as and when due.

73.     UHG's debt is rated investment grade. UHG's credit rating with two of the three principal credit rating agencies, Standard & Poor's Ratings Service, and Fitch Ratings, has remained steady since August 9, 2006, the date the 10-Q for the Second Quarter 2006 was due to be filed by UHG with the SEC.

74.     Moody's Investors Service downgraded UHG's long-term debt ratings and short-term debt rating for commercial paper on October 17, 2006, stating that the downgrade reflects the findings of the Independent Committee. Moody's cited, among other concerns, that "delays in filing the company's 10-Q's for the second and likely the third quarters have left the company vulnerable to action by bondholders. As a result, the company's financial flexibility is somewhat diminished as it builds a strong liquidity position to counter the possible negative outcomes or constraints in accessing the public capital markets."

75.     Moody's also stated that offsetting its concerns "is UnitedHealth's ability to consistently achieve strong organic membership and its well conceived acquisition strategy which have made it one of the largest, strongest, and most profitable healthcare companies in the nation. . . . The company's unregulated cash flow, combined with dividends from regulated subsidiaries, has provided the holding company with the strong financial flexibility to service its debt, invest in its business, and seek acquisitions."

76.     On August 10, 2006, although issuing a "negative outlook" with respect to UHG, Standard & Poor's stated that "[b]ecause of [UHG's] extremely strong earnings capacity and generation of cash flows, we still believe that accounting and tax impacts are unlikely to be large enough to impair our overall view of operating performance and balance sheet. [UHG] has a very strong and diversified consolidated competitive position and the ability to integrate and expand its business through acquisition."

77.     On October 16, 2006, Standard & Poor's reaffirmed its rating, repeating its August 10, 2006 statement quoted above.

78.     On August 30, 2006, Fitch, although placing UHG's ratings on "rating watch negative," noted that its assessment was caused in part by the issuance of the Notice of Default at issue in this action, and acknowledged "that [UHG's] operating fundamentals remain strong, and its ability to refinance any debt that may potentially be exposed to an accelerated maturity is believed to be good."

79.     On October 16, 2006, Fitch reaffirmed its rating, stating that "Fitch acknowledges that [UHG]'s operating fundamentals remain very strong, and does not believe that the developments recently announced significantly diminish the company's ability to meet its debt and policyholder obligations."

80.     On September 26, 2006, the Notes traded at 99.20% of par, a difference of .079% as compared to the issuance price in March at 99.279% of par, an aggregate of less than $1,000,000 below the $843,871,500 issue price of the Notes.

81.     On October 16, 2006, UHG executed a committed $7.5 billion revolving credit facility with a number of major banks participating as lenders thereunder, the

proceeds from which may be used for, among other things, repayment of the Notes.

82.     On October 18, 2006, UHG filed with the SEC a Current Report on Form 8-K attaching the credit agreement ("Credit Agreement 8-K"). UHG's Credit Agreement 8-K is attached as Exhibit E hereto.

### COUNT I
### (Declaratory Judgment)

83.     Plaintiff UHG repeats and re-alleges the allegations set forth in paragraphs 1 through 84 of the Complaint as if fully set forth herein.

84.     The plain language of Section 504(i) of the Indenture requires that UHG "cause copies of all current, quarterly and annual financial reports," which UHG is required to file with the SEC, to be filed with the Trustee "within 15 days of filing" such reports with the SEC.

85.     Section 504(i) of the Indenture does not impose an independent requirement that UHG file timely its periodic reports with the SEC.

86.     Similarly, Section 314(a) of the TIA requires that UHG provide to the Trustee copies of annual reports and other information that it is required to file with the SEC, but does not provide a time period during which such reports are to be provided to the Trustee.

87.     Because UHG has not yet filed its 10-Q for the Second Quarter 2006, and, therefore, is not in a position to provide copies of its 10-Q to the Trustee, UHG is not in default under Section 504(i) of the Indenture, as alleged in the Notice.

88.     An actual controversy exists between Plaintiff and Defendants as to the

meaning of the requirements of the Indenture and the TIA. The declaratory relief sought

in this action will clarify and settle the legal relations between the parties and will afford

relief from the uncertainty and controversy that presently exist with respect to the parties'

respective rights and duties under the Indenture.

89.     The controversy is now ripe for determination, because of the issuance of

the Notice purporting to declare a Default under the Indenture and the prospect that the

Trustee or the registered holders will seek to accelerate the Notes.

90.     Pursuant to 28 U.S.C. §§ 2201 and 2202, UHG is entitled to a declaratory

judgment that UHG is not in default under Section 504(i) of the Indenture.

## COUNT II
### (Declaratory Judgment in the Alternative)

91.     Plaintiff UHG repeats and re-alleges the allegations set forth in paragraphs

1 through 91 of the Complaint as if fully set forth herein.

92.     Even if UHG is in default under Section 504(i) of the Indenture, enforcing

acceleration for such a default would be inequitable under the facts of this case and

should be denied, because:

> (i)     on July 19, 2006, UHG issued a press release containing financial data for its fiscal quarter ended June 30, 2006, provided that press release to the SEC in the Second Quarter Earnings 8-K, and held a conference call on that date to discuss that financial data, invited investor participation in that conference call and held a webcast of that conference call;

> (ii)     on August 10, 2006, one day past the deadline for filing its 10-Q, UHG filed with the SEC a notice on Form 12b-25 and a Current Report on Form 8-K containing substantially all the information that would be in a Form 10-Q for the Second Quarter 2006;

> (iii)     on August 14, 2006, well within 15 days after the date UHG's 10-Q

was scheduled to be filed with the SEC, UHG provided the Form 12b-25 to the Trustee;

(iv)    on October 19, 2006, UHG issued a press release containing financial data for its fiscal quarter ended September 30, 2006, provided that press release to the SEC in the Third Quarter Earnings 8-K, and held a conference call on that date to discuss that financial data, invited investor participation in that conference call and held a webcast of that conference call;

(v)    the reason for UHG's delay in filing its 10-Q with the SEC is to consider the accounting treatment in past reporting periods of previously granted stock options, which does not affect UHG's current financial performance, and will not affect UHG's ability to make payments on its debt;

(vi)    UHG's credit ratings with two of the three principal rating agencies, as well as the price of the Notes, have remained steady;

(vii)    acceleration would require UHG to repay $850,000,000 in aggregate principal amount of the Notes nearly 30 years ahead of schedule; and

(viii)   rescission of acceleration would require a vote of the Holders of a majority in principal amount of the Notes.

93.    An actual controversy exists between Plaintiff and Defendants as to whether enforcing acceleration under the facts here would be equitable. The declaratory relief sought in this action will clarify and settle the legal relations between the parties and will afford relief from the uncertainty and controversy that presently exist with respect to the parties' respective rights and duties under the Indenture.

94.    The controversy is now ripe for determination, because of the issuance of the Notice purporting to declare a Default under the Indenture and the prospect that the Trustee or the registered holders will seek to accelerate the Notes.

95.    Pursuant to 28 U.S.C. §§ 2201 and 2202, even if UHG is in default under Section 504(i) of the Indenture, UHG is entitled to a declaratory judgment that enforcing acceleration under the facts here would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff UHG requests that this Court issue orders:

A.  Declaring that UHG is not in default under Section 504(i) of the Indenture;

B.  In the alternative, declaring that enforcing acceleration for default under Section 504(i) under the facts here would be inequitable;

C.  Permanently enjoining Defendants BoNY and Cede from declaring acceleration of the Notes; and

B.  Granting UHG such other and further relief as this Court may deem just and proper.

Dated:  October 25, 2006

DORSEY & WHITNEY LLP

By _____

Peter W. Carter #0227985
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600

*Of Counsel*:

Robert J. Giuffra, Jr.
Jennifer L. Parkinson
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Plaintiff UnitedHealth Group Incorporated*

 **DORSEY**

*107 7/ 92*

**PETER W. CARTER, ESQ.**
(612) 340-5635
FAX (612) 340-2868
carter.peter@dorsey.com

October 25, 2006

RECEIVED
OCT 2 5 2006
U.S. CLERK
MINNEAPOLIS, MINNESOTA
DISTRICT COURT

**VIA MESSENGER**

Clerk of Court
United States District Court
300 South 4th Street
Minneapolis, MN  55415

      Re:    <u>UnitedHealth Group Incorporated v. Cede & Co., et al</u>.
            Court File No. _____

Dear Clerk of Court:

      Enclosed for filing in the above-referenced matter are the following:

1.      Civil Cover Sheet;

2.      Summons and Complaint;

3.      Rule 7.1 Disclosure of UnitedHealth Group Incorporated; and

4.      A check in the amount of $350.00, representing the filing fee.

                       Very truly yours,

                       Peter W. Carter

PWC/cjs
Enclosures

DORSEY & WHITNEY LLP • WWW.DORSEY.COM • **T** 612.340.2600 • **F** 612.340.2868
SUITE 1500 • 50 SOUTH SIXTH STREET • MINNEAPOLIS, MINNESOTA 55402-1498
USA   CANADA   EUROPE   ASIA